UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEONITE IRVING,<br><br>    *Plaintiff*,<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>    *Defendants*. | Civil Action No. 19-3818 (RDM) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Leonite Irving, proceeding *pro se*, brings this action under 42 U.S.C. § 1983 against Defendants the District of Columbia, Muriel Bowser, Quincy L. Booth, and the Warden of the District of Columbia jail, alleging that their deliberate indifference to an episode of inmate violence of which he was the victim violated the Fifth and Eighth Amendments. Dkt. 1 at 2–5 (Compl.). Defendant District of Columbia (hereinafter "the District") moves to dismiss, Dkt. 10, arguing that (1) Irving's Complaint fails to state a claim under *Monell v. New York City Department of Social Services*, 436 U.S. 658, 694 (1978); and (2) the "Court should abstain from considering [the remaining claims in] Plaintiff's Complaint because he has a duplicative dispute pending in [D.C.] Superior Court," Dkt. 10 at 6.[1]

---

[1] In its motion to dismiss, the District notes that "Defendants Muriel Bowser and Quincy Booth have not been properly served with a summons and copy of the Complaint" and that "no summons was issued for Defendants Booth or John Doe." Dkt. 10 at 3 n.2. Defendant Bowser, however, was served prior to the filing of the instant motion, Dkt. 6, Dkt. 7, and Defendant Booth has since been served, Dkt. 15, Dkt. 17. It is true that John Doe has not yet been served, but that is because the United States Marshals Service cannot effectuate service on an unidentified defendant. To avoid entry of default, Defendants Bowser and Booth shall promptly respond to the Complaint or seek an extension of time to do so in light of the possibility that Irving will file an amended complaint, as authorized below.

For the reasons that follow, the District's motion to dismiss is **GRANTED** in part and **DENIED** in part.

## I.  BACKGROUND

As it must, the Court accepts Irving's factual allegations as true for purposes of evaluating the District's motion to dismiss.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court is further mindful that "*pro se* pleadings should be liberally construed," *Nichols v. Vilsack*, No. 13-cv-1502, 2015 WL 9581799, at *1 (D.D.C. Dec. 30, 2015) (quotation marks omitted), and that Irving must be afforded "the benefit of all inferences that can be derived from the facts alleged," *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quotation marks omitted).

On March 18, 2019, Irving was repeatedly stabbed by a fellow inmate at the D.C. jail where he was then incarcerated.  Dkt. 1 at 3 (Compl. ¶¶ 1–3).  The attack took place in Irving's housing unit, and when he "tried to run and get away" from his assailant, Irving found the "sally port gates were closed," preventing his escape.  *Id.* at 3–4 (Compl. ¶¶ 2–4).  The unit officers stationed nearby meanwhile refused to intervene and instead "stood [] and watched" Irving's assault.  *Id.* (Compl. ¶ 5).  By the time the attack ended, Irving "had received 8 stab wounds[] to his body and head."  *Id.* (quotation marks omitted).  He was then "rushed to [an] outside hospital" where he received "numerous stitches to close the stab wounds."  *Id.* (Compl. ¶ 7).

On December 20, 2019, Irving filed this suit under 42 U.S.C. § 1983, claiming (1) that Defendants exhibited "deliberate indifference to the serious risk of inmate[-]on[-]inmate violence that threatened [his] safety and proximately caused his injuries," and (2) that their deliberate indifference violated both the Fifth and Eighth Amendments to the United States Constitution.

*Id.* at 3, 5 (Compl.). At the same time, Irving filed a motion for leave to proceed *in forma pauperis*, Dkt. 2, which the Court granted, Dkt. 4.[2]

On March 4, 2020 Irving moved for appointment of counsel, Dkt. 5 at 1, and to amend his Complaint such that "all Defendants be sued in [their] [i]ndividual as well as the[ir] [o]fficial [c]apacit[ies]," *id.* at 2. On June 30, 2020, the District notified the Court that Irving's instant suit "appear[ed] duplicative of [a] case filed in Superior Court of the District of Columbia, where [Irving] is represented by counsel." Dkt. 9 at 1. Accordingly, the Court denied Irving's motion for appointment of counsel "without prejudice pending a determination of whether this case is duplicative of the pending case in Superior Court in which Plaintiff is represented by counsel." Minute Order (July 17, 2020). As the Court explained, "[u]ntil that question is resolved, the Court cannot determine whether Plaintiff is 'unable to retain counsel by other means[] and the degree to which the interests of just[ice] will be served by appointment of counsel.'" *Id.* (quoting *Lamb v. Millennium Challenge Corp.*, 228 F. Supp. 3d 28, 47 (D.D.D. 2017)).

Shortly after the Court denied Irving's motion for appointment of counsel, the District filed the instant motion to dismiss. Dkt. 10. Because Irving was proceeding *pro se*, the Court notified him that he was "entitled to file a memorandum and supporting evidence in response" to the District's motion. Dkt. 12 at 1. The Court further informed Irving that if he "fail[ed] to respond to [the District's] motion in the time provided, the Court may (1) treat the motion as conceded; . . . (2) rule on [the] motion based on [the District's] arguments alone and without

---

[2] Under the terms of the Court's order, Irving was "obligated to pay an initial filing fee in the amount of $18.68" and to pay "twenty percent of the preceding month's income credited to his prison account as continued partial payments on the remaining balance of the $350.00 filing fee." Dkt. 4 at 1. Thus far, Irving has made two payments to the Clerk totaling $14.94—that is, $3.74 short of the initial filing fee that Irving was ordered to pay. Nevertheless, the District has not identified any authority stating (or even argued) that Irving's failure to tender his full filing fee requires the dismissal of his Complaint.

considering Plaintiff's arguments; or (3) dismiss Plaintiff's claims for failure to prosecute." *Id.* (citing *Bristol Petrol. Corp. v. Harris*, 901 F.2d 165, 167 (D.C. Cir. 1990); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1962)). Finally, the Court noted that "if Plaintiff 'files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.'" *Id.* (quoting *Xenophon Strategies, Inc. v. Jernigan Copeland & Anderson, PLLC*, 268 F. Supp. 3d 61, 72 (D.D.C. 2017)).

On August 28, 2020, Irving filed his opposition to the District's motion to dismiss. Dkt. 13. The District filed its reply to Irving's opposition on September 10, 2020. Dkt. 16. The District's motion to dismiss, Dkt. 10, is thus now ripe for the Court's consideration.

## II.  LEGAL STANDARD

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of the allegations contained in the complaint. A complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also* Fed. R. Civ. P. 8(a). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). If the complaint's allegations fail to meet this standard, the court must dismiss the action. *Id.* To be sure, complaints by *pro se* litigants are

held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nevertheless, even a *pro se* litigant must comply with the Federal Rules of Civil Procedure. *See Jarrell v. Tisch*, 656 F. Supp. 237, 239 (D.D.C. 1987). Accordingly, "a *pro se* complaint, like any other, must present a claim upon which relief can be granted," as required by Rule 12(b)(6). *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994) (citation omitted)).

### III.  ANALYSIS

The Court will first consider whether abstention is proper and will then address whether Irving's *Monell* claim is adequately pled under Rule 12(b)(6).

**A.     Abstention**

The District argues that the "Court should abstain from considering Plaintiff's Complaint [in its entirety] because [Irving] has a duplicative dispute pending in Superior Court (*Irving v. District of Columbia*, 2020 CA 001777 B)." Dkt. 10 at 6. In support of that argument, the District points to the *Colorado River* abstention doctrine, by which "a district court may abstain from exercising jurisdiction in circumstances of parallel, duplicative litigation." *Foster-El v. Beretta U.S.A. Corp.*, 163 F. Supp. 2d 67, 71 (D.D.C. 2001) (citing *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976)).

When deciding whether to abstain under *Colorado River*, a district court should consider several factors, none dispositive: "(1) whether one court assumed jurisdiction . . . first; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order of jurisdiction in the concurrent forums; (5) whether the case involves federal law; and (6) whether the state-court proceeding can adequately protect the parties' rights." *Id.* (citing *Colorado River*, 424 U.S. at 818; *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460

U.S. 1, 25–26 (1983)).  Importantly, however, the propriety of *Colorado-River* abstention "'does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, *with the balance heavily weighted in favor of the exercise of jurisdiction*.'" *Edge Inv., LLC v. District of Columbia*, 927 F.3d 549, 554 (D.C. Cir. 2019) (quoting *Moses H. Cone*, 460 U.S. at 16) (emphasis added).  The balance is so weighted, the Supreme Court explained in *Colorado River* itself, because of the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them."  424 U.S. at 817; *see also Edge Inv.*, 927 F.3d at 553 n.3 (collecting cases).  Consequently, "the [general] rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction."  *Colorado River*, 424 U.S. at 817 (internal quotation marks omitted).  In turn, "dismissal of a federal suit due to the presence of a concurrent state proceeding" is warranted only in the face of "exceptional circumstances."  *Id.* at 818; *see also Hoai v. Sun Ref. & Mktg. Co.*, 866 F.2d 1515, 1520 (D.C. Cir. 1989) ("*Colorado River* created a narrow exception to the exercise of federal jurisdiction, and only truly exceptional circumstances will justify a stay or dismissal on grounds of judicial economy." (quotation marks omitted)).

The District argues that those exceptional circumstances are present here because "[t]he facts of this case and Plaintiff's Superior Court case are the same and the claims are similar." Dkt. 10 at 7.[3]  Thus, "[l]itigation of the same matter in two different forums would result in piecemeal litigation—duplicative judicial effort which would potentially render conflicting results."  *Id.*  And that, the District reasons, presents a "compelling case" for abstention.  *Id.*

---

[3] The District effectively ignores the other *Colorado River* factors, and perhaps with good reason, as many of them tip against abstention: the Court here assumed jurisdiction first (factor one); the federal forum is not inconvenient relative to the state forum, as both are in D.C. (factor two); and the case involves federal law (factor five).  *See Foster-El*, 163 F. Supp. 2d at 71; *Colorado River*, 424 U.S. at 815–818.

But it does not.  Although the facts in each case are similar, the *claims* are not: this action alleges violations of the federal Constitution made actionable through federal statute; the Superior Court case alleges violations of municipal law made actionable through the common law of tort.  *Compare* Dkt. 1 (Compl.) *with* Dkt. 2 (Compl.), *Irving v. District of Columbia*, 2020 CA 001777 B.[4]  Abstaining and then dismissing Irving's Complaint *with prejudice* in light of that difference, as the District requests, Dkt. 10 at 7, would risk leaving him without a forum to raise his constitutional claims at all: the Superior Court is not obligated to grant Irving leave to amend and, were the Court to dismiss his claims with prejudice, Irving would face the risk that the Superior Court would treat this Court's order as preclusive.  Moreover, even if the Court were to dismiss without prejudice, and even if the Superior Court were to grant leave to amend, the District might then remove the entire case to this Court based on federal-question jurisdiction, frustrating the interest in judicial efficiency.  The *Colorado River* doctrine is designed to help federal courts manage their resources, not to inhibit plaintiffs from pressing their claims.

In addition, and perhaps more fundamentally, the D.C. Circuit has emphasized that "'*Colorado River*'s factor concerning the avoidance of piecemeal litigation does not favor abstention unless the circumstances enveloping those cases will likely lead to piecemeal litigation that is *abnormally excessive or deleterious*.'"  *Edge Inv.*, 927 F.3d at 556 (quoting *Ambrosia Coal & Constr. Co. v. Pagés Morales*, 368 F.3d 1320, 1333 (11th Cir. 2004)

---

[4] Although the Superior Court complaint is neither referenced in nor integral to Irving's Complaint in this case, the Court may take judicial notice of the "underlying case record" in a related case.  *United States Telesis, Inc. v. Ende*, 64 F. Supp. 3d 65, 67 (D.D.C. 2014), *aff'd sub nom. U.S. Telesis Inc. v. Ende*, No. 14-7146, 2015 WL 653325 (D.C. Cir. Feb. 5, 2015); *see also Veg–Mix, Inc. v. U.S. Dept. of Agric.*, 832 F.2d 601, 607 (D.C. Cir. 1987) ("[I]t is settled law that the court may take judicial notice of other cases including the same subject matter or questions of a related nature between the same parties." (internal citations omitted)).

(emphasis added)).  "[T]he mere risk of duplicating efforts and different results," by contrast, "'does not, without more, warrant staying exercise of federal jurisdiction.'"  *Id.* (quoting *Colorado River*, 424 U.S. at 816); *see also Hoai,* 866 F.2d at 1520 ("The mere desire to resolve all issues involving related facts in one court does not justify depriving [a plaintiff] of his federal forum.").

Such "abnormal[]" or "deleterious" consequences are not present in this matter, and that counsels decisively against abstention.  *Edge Inv.*, 927 F.3d at 556.  As *Edge* explained:

> [M]ere duplication and potential inconsistency—in their simplest forms—are all we have here.  There are only two, relatively confined litigations at issue: a single Superior Court action . . . and a single federal-court action.  Moreover . . . the vast majority of the claims that [plaintiff] asserts in federal court were also asserted in the Superior Court; both cases arise from the same core set of facts; and the issues will be resolved largely by reference to the same evidence.
>
> . . . In short, this case raises nothing like the piecemeal litigation risks at issue in *Colorado River* . . . .  Instead, it is a garden-variety example of two lawsuits proceeding concurrently in two courts.

*Id.* (internal quotation marks, citations, brackets, and alterations omitted).  These cases are in that garden, too.

The Court will, accordingly, deny the District's motion to dismiss pursuant to *Colorado River*.

**B.     *Monell***

The District more successfully argues that Irving's *Monell* claims—that is, the sole claims against the District itself—should be dismissed under Rule 12(b)(6).

42 U.S.C. § 1983 provides a private cause of action against any "person" who, under color of state or District of Columbia law, deprives another individual of a federal constitutional or statutory right.  *See generally Monell*, 436 U.S. at 691–94.  Municipalities like the District of Columbia may be held liable under § 1983 for their "agents' constitutional torts" if those agents

"acted pursuant to municipal policy or custom." *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004). To establish municipal liability under § 1983, a plaintiff must allege that (1) "there was an underlying constitutional [or statutory] violation;" and (2) "the municipality's policy or custom caused the constitutional violation." *Bell v. District of Columbia*, 82 F. Supp. 3d 151, 155 (D.D.C. 2015). To satisfy the second prong of this test—that is, to show that a municipality's "custom or policy caused the claimed violations of his constitutional rights," *id.*— a plaintiff must allege that the municipality (1) "explicitly adopted the policy that was the moving force of the constitutional violation;" (2) "knowingly ignore[d] a practice that was consistent enough to constitute custom;" or (3) failed to "respond[] to a need . . . in such a manner as to show deliberate indifference to the risk that not addressing the need will result in constitutional violations," *Warren*, 353 F.3d at 39 (internal quotation marks omitted). A plaintiff may also succeed by alleging that an authorized, municipal policymaker made a one-time decision that resulted in the alleged constitutional deprivation. *See Singletary v. District of Columbia*, 766 F.3d 66, 73 (D.C. Cir. 2014).

Here, the District argues that Irving "only vaguely alleges that unit officers at D.C. Jail 'stood by and watched' as [he] was stabbed by his fellow inmates" and that "*Monell*[] claims of this sort—which allege injury based solely on the isolated acts of government employees or agents—must fail." Dkt. 10 at 6 (quoting Dkt. 1 at 4 (Compl. ¶ 5)). The District further contends that Irving's opposition to its motion to dismiss "fails to respond to [its] argument that [Irving's] Complaint fails to properly plead municipal liability," and thus, that "the Court should treat [the District's] argument [as to *Monell* liability] as conceded." Dkt. 16 at 1 (citing *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003)).

The Court agrees that Irving has not responded to the District's *Monell* liability arguments and that the point is arguably conceded. *See* Dkt. 12 at 1; *see also Xenophon Strategies,* 268 F. Supp. 3d at 72; *Hopkins*, 284 F. Supp. 2d at 25. But even if *Monell* liability properly remained in dispute, Irving's claims against the District of Columbia would nonetheless fail as a matter of law: his Complaint fails to articulate any connection between a municipal policy or custom and the alleged failure of prison staff to deter, halt, or remediate the attack to which he was subject. Irving does not identify any policy of the District that caused him harm; he does not allege that attacks at the jail were "consistent enough to constitute [a] custom" about which the District or one its policymakers was aware; and he does not claim that the District knew or should have known of the risk of" prison attacks like this one. *Warren*, 353 F.3d at 39. As this Court has previously observed, in most cases of municipal liability "the municipality received notice of the risk before the constitutional tort occurred." *Williams v. Ellerbe*, 317 F. Supp. 3d 144, 149 (D.D.C. 2018). "In the present case, however, [Irving] fails to allege that the District had any advance notice or reason to believe that the" constitutional torts alleged here would occur. *Id.*

For these reasons, Irving's claims against the District of Columbia will be dismissed without prejudice. The Court will permit Irving to file an amended complaint within 45 days, if appropriate. The Court cautions Irving, however, that he must have a good-faith basis for alleging municipal liability and that, absent a factual basis for asserting such a claim, he should not do so.

## CONCLUSION

The District's motion to dismiss, Dkt. 10, is **GRANTED** in part and **DENIED** in part; it is further

**ORDERED** that Plaintiff's claims against the District of Columbia are **DISMISSED** without prejudice for failure to state a claim; it is further

**ORDERED** that Plaintiff may file an amended complaint on or before March 30, 2021; it is further

**ORDERED** that the parties are directed to appear for a telephonic status conference on April 2, 2021 at 3:00 pm to discuss further proceedings in this matter; and it is further

**ORDERED** that Plaintiff's pending motion for leave to amend, Dkt. 5 at 2, is **DENIED** as moot in light of the Court's order granting Plaintiff leave to file an amended complaint on or before March 30, 2021.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  February 9, 2021